IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| MARSHAWN STOKES, #288464 : | |
|    Plaintiff, : | |
| : | |
| v. : | Civil Action No.: L-05-2261 |
| : | |
| WARDEN LEHRMAN DOTSON,[1] et al. : | |
|    Defendants. : | |

**MEMORANDUM**

Pending is (i) the Motion to Dismiss, or in the Alternative, Motion for Summary Judgment filed by Defendants Dotson, Sizer, and Peguese (collectively referred to as "Defendants"), and (ii) Marshawn Stokes's ("Stokes") Motion for Emergency Injunctive Relief.[2] Because the issues have been fully briefed, a hearing is unnecessary. See Local Rule 105.6. (D. Md. 2004). For the foregoing reasons, the Court will, by separate Order, GRANT Defendants' Motion and DENY Stokes's Motion.

**I. Background**

On October 14, 2005, Stokes filed an amended complaint under 42 U.S.C. § 1983.[3] Stokes contests his transfers from the Maryland House of Correction Annex ("MHC-A") to the Maryland Correctional Adjustment Center ("MCAC"), and from MCAC to Western Correctional

---

[1] The Clerk shall AMEND the docket to reflect the name of Defendant "Warden" as Warden Lehrman Dotson.

[2] In his request for emergency relief, Stokes asks to be placed back in the Maryland House of Correction Annex ("MHC-A") with all general population housing rights, including access to the law library. (Docket No. 17). In light of the Court's analysis in II.B.1, infra, the Motion is DENIED.

[3] On August 16, 2005, Stokes mailed a letter to the Court, which the Court construed as a complaint under 42 U.S.C. § 1983. On September 14, 2005, the Court ordered Stokes to file an amended complaint that: (i) named proper party defendants, (ii) identified the claims that he wished to bring, (iii) explained how the defendants have violated his civil rights, and (iv) discussed his injuries, if any.

Institution/North Branch Correctional Institution ("WCI"/"NBCI").[4] He complains that certain of his personal items were lost or damaged in the transfers, which the Court construes as a claim under the Due Process Clause. Finally, he alleges that the conditions at MCAC violate the Eighth Amendment. On April 11, 2006, the Defendants moved to dismiss or for summary judgment on all counts.[5]

## II. Analysis

### A.   Standards of Review:

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). In determining whether a genuine issue of material fact exists, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

### B.   Analysis:

#### 1. Intrastate Prison Transfer:

Stokes contests his transfers from MHC-A to MCAC, and from MCAC to WCI/NBCI. On August 3, 2005, Stokes, who is a maximum security inmate, was transferred from MHC-A to

---

[4] Stokes also contends that certain restrictions at WCI/NBCI violate due process.

[5] Defendants have attached exhibits to their motion, converting it into one for summary judgment. Fed. R. Civ. P. 12(b).

MCAC, where he was temporarily housed.  On September 1, 2005, he was transported to WCI/NBCI, where he is now housed.[6]  The Court construes this as a due process claim.

The Constitution does not entitle a prisoner to be held in any particular prison.  See Montayne v. Haymes, 427 U.S. 236, 243 (1976); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Paoli v. Lally, 812 F.2d 1489, 1493 (4th Cir. 1987).  A mere transfer from one facility to another does not violate due process.  Id.

Stokes also complains of the conditions at WCI/NBCI.  In general, he complains that WCI/NCBI is more restrictive than MHC-A.[7]  A due process violation may arise if a state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).

Stokes does not meet the Sandin standard.  He fails to demonstrate that the conditions at WCI/NBCI are significantly more onerous than those at MHC-A, where he was originally housed.  See Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997); Knox v. Lanham, 895 F. Supp. 750, 758-59 (D. Md. 1995); see also Patrick v. Secretary, 156 Md. App. 423, 434-39, 847 A.2d 450, 457-60 (Md. App. 2004) (conditions at MCAC do not implicate a protected liberty interest).  Nor does he demonstrate that he received significantly more onerous treatment than the average maximum security inmates at these facilities.

Through the unrebutted affidavit of Jeffrey Nines, a WCI case management specialist, Defendants show that Stokes is provided the opportunity for recreation, showers, an institution job, and visitation privileges consistent with policy for maximum security inmates.  Defendants

---

[6] In August 2005, a large number of MHC-A inmates were transferred from MHC-A to reduce crowded conditions and to "improve operations."  See Johnson v. Commissioner, Civil Action No. JFM-06-3287 (D. Md.) at Paper No. 1.

[7] Among other things, Stokes complains that he does not have full access to the library and other facilities, that he is handcuffed on the way to and from the showers and recreation area, and that he is restrained during his visitation periods.

concede that Stokes, as a maximum security prisoner, must be restrained when he is ferried to and from WCI, which is a medium security facility.  Defendants point out that during transport Stokes is escorted by two correctional officers, who are responsible for protecting him.[8]

Stokes also complains about being shackled during visitations.  Requiring medium security prisoners to be shackled during visitation might be atypical.  Stokes is not a medium security prisoner, however.  For a maximum security prisoner, wearing shackles during visitation does not impose a "significant hardship...in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.  Therefore, Stokes's transfers and housing at WCI/NBCI do not amount to a violation of his due process rights.

### 2. Loss and Destruction of Property:

Stokes claims that during the transfers his radio was destroyed, and that his typewriter, personal photographs, and some of his legal papers were lost.  Again, the Court construes Stokes's argument as a due process claim.  See, e.g., Parratt v. Taylor, 451 U.S. 527, 542-43 (1981) (negligent deprivation of prisoner's property), *overruled on other grounds*, Daniel v. Williams, 474 U.S. 327 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional deprivation).

The Due Process Clause is violated only when prisoners are deprived of property without recourse to post-deprivation proceedings.  Id.  Stokes has recourse to such proceedings, and he has taken advantage of them.  When he filed the instant complaint, Stokes stated that he was pursuing an administrative remedy.  The administrative grievance system is Stokes's proper forum.

---

[8] Stokes worries that unrestrained prisoners may attempt to harm him while he is restrained.

The alleged loss of legal papers calls for a slightly different analysis. Here, Stokes must show that the deprivation of his papers prejudiced his case(s) so as to deny him his constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 349 (1996). This he has not done. Stokes alleges that he filed a grievance when his Nintendo Game Cube and games were taken from him. On August 18, 2005, a hearing was held on the grievance. Stokes contends that one of the lost documents was a "memorandum," which he needed in order to make an effective presentation. Stokes never describes the memorandum, explains its significance, or elucidates why not having it hampered him. Thus, his claim fails.

Stokes also complains that he needs a full copy of his criminal trial transcript "for possible amendments and future proceedings" in his federal habeas corpus case (United States v. Stokes, Crim. No. L-98-0258). Again, his complaint suffers for its vagueness. He does not describe the amendments or proceedings. Nor does he explain why he needs a full transcript in connection with them. Moreover, the Court's docket shows that, even without a full transcript, Stokes has been able to file two amendments and several other motions in L-98-0258. Therefore, Stokes has failed to show how the alleged loss of transcript pages deprived him of court access. Accordingly, the Court will dismiss the claim.[9]

**3. Eighth Amendment Claim**:

To satisfy the objective component of an Eighth Amendment claim, Stokes must "produce evidence of a serious or significant physical or emotional injury resulting from the

---

[9] Stokes also complains that Defendants "Ragin" and "Whyte" were partly responsible for the loss and damage to his property. Two separate attempts to serve process on those Defendants were unsuccessful. (Docket Nos. 8, 11, & 12). Because Stokes has failed to meet his burden of showing a due process violation, the Court dismisses those claims, as well.

5

challenged conditions," or demonstrate a substantial risk of such harm.[10]  Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (citations omitted).

Stokes has not made such a showing.  He alleges that, during his month-long stay at MCAC he did not receive ice on hot days, was without his shower shoes for over a week, and was denied commissary privileges so that he could purchase shower shoes or a fan.  He never alleges that he has been physically or emotionally injured by these conditions.  Nor can he contend that the conditions pose a substantial risk of harm.  Accordingly, Stokes fails to state an Eighth Amendment claim.[11]

### III.   Conclusion

For the foregoing reasons, the Court will, by separate Order:

(i)    DIRECT the Clerk to AMEND the docket as per n.1, supra;

(ii)   GRANT Defendants' Motion to Dismiss or for Summary Judgment;

(iii)  ENTER judgment in favor of Defendants Dotson, Peguese, and Sizer;

(iv)   DISMISS the Complaint against Defendants Ragin, Whyte, and "Chief of Security;"

(v)    DENY Stokes's Motion for Emergency Relief; and

(vi)   DIRECT the Clerk to CLOSE this case.

---

[10] In order to show that certain treatment of prisoners constitutes cruel and unusual punishment under the Eighth Amendment, Stokes must prove that "the deprivation of [a] basic human need was *objectively* 'sufficiently serious,'" and that "*subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (citations omitted).

[11] Stokes also named the "Chief of Security" of MCAC as a defendant.  Stokes's amended complaint, however, raises no particularized claims against the Chief of Security. Because no Eighth or Fourteenth Amendment violations have been shown regarding Stokes's transfer to and housing at MCAC, the case shall be dismissed as to that Defendant.

Dated this 8th day of March 2007.

/s/
_____
Benson Everett Legg
Chief Judge